UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRANDON CARL GOODWIN                                                                    PLAINTIFF

VS.                               Civil No. 2:14-cv-02162-MEF

CAROLYN W. COLVIN,                                                                       DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Brandon Carl Goodwin, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

Plaintiff filed his applications for DIB and SSI on June 8, 2012, alleging an onset date of September 8, 2011, due to spinal osteoarthritis, degenerative disc disease, spinal stenosis, high blood pressure, and high cholesterol. (T. 125) Plaintiff's applications were denied initially and on reconsideration. (T. 52-54, 55-58, 63-64, 65-67) Plaintiff then requested an administration hearing, which was held via teleconference before Administrative Law Judge ("ALJ"), Hon. Clifford Shilling, on April 23, 2013.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 27 years old and had graduated from high school. (T. 38, 196) His past relevant work experience included working as a general laborer in construction

1

from July 2006 until September 2007 and August 2010 to August 2011, a security guard in 2007, a production worker in 2009, and a factory worker in 2010. (T. 127)

On July 26, 2013, the ALJ found Plaintiff's degenerative disc disease (status post-surgery), hypertension, and obesity severe; however, he found Plaintiff's hyperlipidemia not severe as it caused no more than minimal vocationally relevant limitations. (T. 11-12) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of his impairments, the ALJ concluded Plaintiff was not disabled from September 8, 2011 through the date of his Decision issued July 26, 2013. The ALJ determined Plaintiff had the RFC to perform light work, except he was limited to no more than frequent climbing of ramps and stairs and occasional use of ladders, ropes, or scaffolds. Plaintiff was limited to positions that required no more than occasional balancing, stooping, kneeling, crouching, and crawling. (T. 12)

Plaintiff appealed this decision to the Appeals Council, but his request for review was denied on June 24, 2014. (T. 1-3) Plaintiff then filed this action on July 29, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 8) Both parties have filed briefs, and the case is ready for decision. (Doc. 10 and 12)

## II.  Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial

evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.    Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset on September 8, 2011 through the date of the ALJ's Decision issued July 26, 2013. Plaintiff raises two issues on appeal, which can be summarized as: (A) the ALJ erred in his RFC determination; and, (B) the ALJ erred in his step four analysis finding Plaintiff could perform his past relevant work. (Doc. 10, pp. 1-4)

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### RFC Determination:

Plaintiff argues the ALJ erred in his RFC determination. (Doc. 10, pp. 3-4) The Court disagrees.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

Plaintiff was diagnosed by Dr. John Pulliam, neurologist, on August 16, 2011 with displacement of lumbar intervertebral disc without myelopathy; spinal stenosis, lumbar region, with neurogenic claudication; and, morbid obesity. (T. 343) Plaintiff's x-rays from August revealed moderate loss of interspace height at L5-S1; the alignment of the lumbar spine was normal. There were five lumbar non-rib-bearing vertebrae. (T. 196) The MRI showed partial segmentation at the S1-S2 level. It was very rudimentary disc space. There was an extremely large disc herniation located centrally to the right at L4-5 level. A moderate disc bulge centrally and to the left at L5-S1. The disc herniation at L4-5 resulted in severe canal stenosis. There might have been slight effacement on the left at S1 nerve root at the L5-S1 level. Overall, the Plaintiff had a generalized constriction of the thecal sac beginning at L4 and extending through the sacrum which was due to epidural lipomatosis. Plaintiff appeared to have some degree of canal stenosis. Specific visualization of the conus was difficult on T2 sagittal images. The doctor did not see any mass lesions or stenosis in the region of the conus. On T2 weighted sagittal images, desiccation of both the L4-5 and L5-S1 interspaces were noted. The Plaintiff was morbidly obese with a subcutaneous fat layer measuring at least 7 centimeters at the L4-5 level. (T. 196)

Dr. Pulliam recommended and performed a L4-5 decompressive laminectomy and discectomy on August 24, 2011. (T. 346, 191) Following the surgery, Plaintiff was restricted to lifting no more than fifteen pounds, no strenuous manual labor, and no repeated bending or stooping. (T. 199) At Plaintiff's follow up appointment on September 6, 2011 he appeared well and was in no apparent distress. Plaintiff's wound was healing and his staples were removed from the low back. (T. 380) On September 22, 2011, Plaintiff related he was doing extremely well, although he continued to have chronic aching in his back. Plaintiff's lower extremity symptomatology, primarily the numbness, had resolved. He continued to take two Aleve per day, but was not taking other medications. (T. 339) Dr. Pulliam limited Plaintiff's physical activity and lifting until December and ordered Plaintiff to begin a slow progressive walking program. (T. 340, 382)

At Plaintiff's December 12, 2011 appointment, Plaintiff had complete resolution of numbness; however, he still continued to have chronic low back pain. (T. 335) Plaintiff had not begun the walking program as advised by Dr. Pulliam. (T. 336) Dr. Pulliam removed all of Plaintiff's activity restrictions and work limitations and discontinued Plaintiff's Hydrocodone-Acetaminophen and Robaxin. (T. 336-337)

Plaintiff began physical therapy in December 2011. By January 2012 the physical therapy notes indicated his tolerance to therapy was excellent, he reported no pain, and was discharged. (T. 260) Plaintiff next sought treatment in June 2012, where the notes indicated Plaintiff had severe pain and limited range of movement in his back. (T. 334) Some of the doctor's notes are illegible, but it is clear Plaintiff was advised to lose weight. (T. 334)

Dr. Karmen Hopkins, state agency medical consultant, performed an RFC assessment on July 16, 2012. Dr. Hopkins determined Plaintiff was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, and he could sit, stand, and walk about six hours in an eight hour

workday. (T. 361) Plaintiff was not limited in pushing or pulling and he could only occasionally stoop and crouch. (T. 362) Dr. Hopkins opined Plaintiff's credibility was diminished by his lack of treatment sought or obtained for pain and the physical therapy notes reporting no pain. (T. 367) Due to the medically determinable impairments of lumbar degenerative disc disease post laminectomy/discectomy and morbid obesity, Dr. Hopkins determined Plaintiff retained the RFC to perform light work with postural limitations. (T. 367) Dr. Bill Payne, state agency medical consultant, reviewed the medical evidence of record on October 12, 2012 and affirmed Dr. Hopkins' assessment. (T. 370)

In assessing the Plaintiff's RFC, the ALJ considered the Plaintiff's testimony at the hearing, testimony of his mother, disability and function reports, the MRI performed in 2012, the x-rays taken in 2012, his physical therapy records, medical records from Dr. Pulliam, and the state agency medical consultative examinations. (T. 9-15)

In additional to the medical evidence, the ALJ took into consideration other factors in evaluating Plaintiff's allegations. Plaintiff failed to follow Dr. Pulliam's treatment plan regarding the walking program. (T. 336) *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). Furthermore, the ALJ determined Plaintiff's daily activities were not congruent with the Plaintiff's allegations. (T. 14) Plaintiff indicated he cared for his dog, went into town on a weekly basis, shopped at Wal-Mart, watched television, folded clothes, vacuumed, made simple meals, put away the dishes, mowed the lawn on a riding mower, drove a car, and was able to handle finances. (T. 145, 147-148) Plaintiff's lifestyle was not indicative of someone who was disabled. *See, e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily

activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F. 3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends").

The Plaintiff argues his weight and history of low chronic back pain post-surgery would prohibit him from frequently climbing ramps or stairs and he could never climb ladders, ropes, or scaffolds at a weight of 400 pounds. (Doc. 10, pp. 3-4) The Plaintiff is mistaken. The Eight Circuit has upheld the denial of disability and found claimants suffering from degenerative disc disease retained the RFC return to their past relevant work. *See Medhaug v. Astrue,* 578 F.3d 805, 816-817 (8th Cir. 2009) (substantial evidence supported the ALJ's decision that an individual with degenerative disc disease could perform light work and return to his past work.); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (substantial evidence supported the ALJ's decision that an individual diagnosed with degenerative disc disease could return to past relevant work.). Furthermore, the records showed Plaintiff did not experience any pain following his physical therapy. (T. 260) Plaintiff only took over-the-counter medications for pain. *See Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). Finally, Dr. Pulliam lifted all of Plaintiff's activity and work restrictions.

The ALJ also noted Plaintiff had not sought treatment for his back for nine months. *See* 20 C.F.R. §§ 404.1530, 416.930 (A claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits.); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (given the Plaintiff's alleged pain, Plaintiff's failure to seek medical treatment may be inconsistent

with a finding of disability). Plaintiff alleges he had not sought treatment due to financial restraints. Failure to seek treatment due to a lack of funds may justify a failure to receive medical care. *Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003). However, a lack of funds alone will not excuse a Plaintiff's failure to obtain treatment or follow medical advice. Generally speaking, a lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). Accordingly, Plaintiff's failure to contact Good Samaritan Clinic or any other clinics offering services to the uninsured or underinsured prevents the Court from concluding that his financial status excuses his failure to obtain consistent treatment. The Court also notes that the record contains no evidence to indicate that Plaintiff was ever turned down for treatment due to his inability to pay for services.

Regarding Plaintiff's obesity, Social Security Regulation 02-1p provides guidance for evaluating obesity. It provides, in part, that obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as *sitting,* standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. Although there is some evidence in the record to show that plaintiff was obese, the Court finds no evidence to indicate that Plaintiff's obesity prevented him from performing work-related activities. None of his treating doctors suggested his weight imposed any additional work-related limitations, and he did not testify that his weight imposed additional restrictions. *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003).

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the

Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the objective medical evidence, opinion evidence, state-agency evidence, and the testimony of the Plaintiff, the Court concludes that the RFC determined by the ALJ is supported by substantial evidence.

**Step-four analysis:**

Plaintiff's final argument is the ALJ erred at step four of his analysis when he determined Plaintiff could return to his past relevant work as a production worker and a security guard. (Doc. 10, p. 3) At step four, the ALJ determines "whether a claimant's impairments keep [him] from doing past relevant work." *Wagner v. Astrue,* 499 F.3d at 853 (quoting *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir. 1996)). If "the claimant has the [RFC] to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. *Moore v. Astrue,* 572 F.3d 520, 523 (8th Cir. 2009); *Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006); *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005).

In determining whether Plaintiff could return to his past relevant work, the ALJ considered both what Plaintiff performed and the vocational expert's testimony, which was consistent with the DOT, as to what was generally performed in the national economy. With the aid of the vocational expert and Plaintiff's testimony, the ALJ determined Plaintiff was capable of performing light, unskilled, past relevant work as a production worker and security guard. (T. 43-46). *See Wright v. Astrue*, 489 Fed. Appx. 147, 149 (8th Cir. 2012), citing 20 C.F.R. §404.165060(b)(2), 416.960(b); *Wagner v. Astrue*, 499 F.3d at 853-854 (an ALJ can "consider the demands of the claimant's past relevant work either as the claimant actually perform it or, as here,

as performed in the national economy.") The undersigned finds substantial evidence supports the ALJ's determination that Plaintiff could perform his past relevant work as a production worker and security guard. The ALJ's determination was supported by objective medical evidence, including opinions of treating physicians, and state agency medical consultants, which expressed the opinion Plaintiff could perform light work with postural limitations.

## IV.   Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 28th day of July, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE